**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**RITA EZELL,**

　　　**Plaintiff,**

**vs.**　　　　　　　　　　　　　**CASE NO. 4:20-CV-00067-MAF**

**ANDREW SAUL, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

　　　**Defendant.**
_____/

**MEMORANDUM OPINION AND ORDER**

　　　This Social Security case was referred to the Undersigned, upon
consent of the parties, ECF No. 10, by United States District Judge, Mark E.
Walker. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review
of the final determination of the Commissioner of the Social Security
Administration (Commissioner) denying Plaintiff's application for a period of
disability and Disability Insurance Benefits (DIB) pursuant to Title II of the
Social Security Act. After careful consideration of the record, the decision of
the Commissioner is AFFIRMED.

**I.　Procedural History**

　　　On December 21, 2016, Plaintiff, Rita Renee Ezell, filed an application
for a period of disability and DIB benefits, alleging disability beginning

February 6, 2015.[1] Tr. 216-18. Plaintiff also applied for Supplemental Security Income (SSI). Tr. 239-44. Plaintiff initially alleged that she became disabled because of "back problems and PTSD," "chronic back pain," "depression," and "anxiety." Tr. 265, 303, 310.

The application was initially denied on March 9, 2017, and again upon reconsideration on June 26, 2017. Tr. 155-159. Plaintiff requested a hearing on July 5, 2017. Tr. 165-66. On July 20, 2018, Administrative Law Judge (ALJ), Lisa Raleigh, held a hearing in Tallahassee Florida. Tr. 17, 34-73. Plaintiff was represented by Matt Liebenhaut, Esq. Tr. 17. Plaintiff and Kathryn Jett, an impartial vocational expert (VE), testified at the hearing. Tr. 17, 44-66 (Plaintiff's testimony); 66-72 (Jett's testimony); 331 (Jett's resume). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims. Tr. 37. The ALJ considered the entire record including Plaintiff's medical records; opinion evidence; Plaintiff's testimony, which the AJL found was "not entirely consistent with the medical evidence and other evidence"; and the testimony of the VE. Tr. 19, 23-27.

---

[1] Citations to the transcript/administrative record, ECF No. 17, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

The ALJ issued a decision on October 30, 2018, denying Plaintiff's application for benefits. Tr. 14-33. The same day, Plaintiff requested review from the Appeals Council. Tr. 1. Plaintiff requested a Review of Hearing Decision on December 21, 2018. Tr. 5. On December 3, 2019, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff filed her Complaint with this Court on February 6, 2020. ECF No. 1. Defendant filed an Answer on June 22, 2020. ECF No. 16. The parties filed memoranda of law, which have been considered. ECF Nos. 22, 23.

## II.   Plaintiff's Claims

Initially, in her Complaint, Plaintiff raised two claims

(1) the ALJ erred in "finding the Plaintiff was capable of performing her past relevant work despite the non-exertional limitations placed on her residual functional capacity that would have precluded those occupations; and"

(2) the ALJ "fail[ed] to properly evaluate the Plaintiff's ability to work at step five of the sequential evaluation pursuant to the Medical Vocational Guidelines which directed a finding of disabled."

ECF No. 1, p. 2.

In her memorandum, Plaintiff asks the Court to resolve:

(1) Whether substantial evidence supports the weight given to opinions from the consultative and non-examining physician consultants. ECF No. 22, pp. 1-6.

Plaintiff alleges the ALJ "improperly disregarded" and "ignor[ed]" the opinions of the consultative examiners. Id., pp. 1-4.

(2) Whether the ALJ improperly relied on incomplete and uniformed opinions from the non-examining physician consultants. Id., pp. 4-6. Plaintiff maintains the consultants did not have access to the records from the consultative examiners or those from the subsequent treating physicians. Id., pp. 5-6. Accordingly, the ALJ failed to "develop a full and fair record" when she did not seek updated medical opinions where the evidence was not available to the consultants. Id., pp. 6-7.

(3) Whether substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she could perform other work where there was no testimony from the VE that supports this conclusion. Id., p. 7.

The Commissioner argues that there is substantial evidence to supports the weight given to opinions from examining and non-examining medical sources and the ALJ correctly determined that Plaintiff is not disabled because she could perform past relevant work even as limited to "simple, routine tasks" and could also perform other work. ECF No. 23, pp. 7-23.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

court conducts what has been referred to as "an independent review of the record." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see</u> 20 C.F.R. § 404.1509 (duration requirement); <u>Barnhart v. Walton</u>, 535 U.S. 212, 223-224 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of her insured status. <u>See</u> 42 U.S.C. § 423(a)(1)(A); <u>Moore</u>, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more

a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A] medical professional who has dealt with a claimant and his maladies over a

long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing

Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Soc. Sec. Admin. Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

**IV.   Legal Analysis**

  A. Findings of the Administrative Law Judge (ALJ)

    The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff suffered from severe impairments (degenerative disc disease of the cervical and lumbar spine, status post cervical fusion, and hypertension), which "significantly limit [Plaintiff's] ability to perform work activities." Tr. 19. The ALJ found that Plaintiff also had several non-severe impairments (migraine headaches; hypothyroidism; chronic kidney disease; and various mental impairments consisting of depression, PTSD, and anxiety), which were "stable" and

"would not cause more than minimal limitations in [Plaintiff's] ability to perform work activities." Tr. 20. Plaintiff does not contest these findings as existing impairments.

However, the ALJ determined the denial of benefits was warranted because Plaintiff "has the residual functional capacity to perform light work" but "is limited to simple, routine tasks." Tr. 23. The ALJ found Plaintiff "capable of performing past relevant work as an audit clerk and accounting clerk" because "this work does not require the performance of work-related activities precluded by [her] residual functional capacity." Tr. 26. Additionally, because the ALJ found that Plaintiff is capable of performing other jobs in the national economy, a finding of "not disabled is . . . appropriate." Tr. 26-28. These determinations are contested by Plaintiff.

The ALJ made several other findings. Plaintiff met "the insured status requirements of the Social Security Act through June 30, 2020," and "has not engaged in substantial gainful activity since February 6, 2015, the alleged onset date." Tr. 19. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. Specifically, the "impairments of the spine do not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root or the spinal cord with

additional findings of…nerve root compression...spinal arachnoiditis…or lumbar spinal stenosis resulting in pseudoclaudication." Tr. 22.

With regard to Plaintiff's mental impairments, the ALJ considered the "paragraph B" criteria, including the severity, and determined Plaintiff had "mild limitations" in "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and in "adapting or managing oneself." Tr. 21.

Accordingly, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." The ALJ noted:

> the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently . . . can frequently climb ramps and stars, occasionally climb ladders, ropes and scaffolds . . . can occasionally balance and stoop, and can frequently kneel, crouch and crawl . . . can have frequent exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts and gases, and can have frequent exposure to unprotected heights, moving mechanical parts and workplace driving. The claimant is limited to simple, routine tasks.

Tr. 23. The ALJ also determined Plaintiff "is capable of performing past relevant work" because both of the prior positions "constitute sedentary exertional jobs that can be performed within the constraints of the residual functional capacity assessment." Tr. 26.

Not only was Plaintiff able to perform past relevant work, the ALJ determined "there are other jobs existing in the national economy that she is also able to perform." Tr. 26. This determination was due following the consideration of the "testimony of the vocational expert . . . Plaintiff's] age, education, work experience, and residual functional capacity." Tr. 27. In particular, the VE testified that given all factors, Plaintiff is also "able to perform the requirements of light exertional occupations, such as a marker, . . . photo machine copying, . . . and router." Tr. 27. Finally, the ALJ determined that Plaintiff was not "under a disability as defined in the Social Security Act from February 6, 2015, through the date of" the ALJ's decision. Tr. 28.

B.  Substantial evidence supports the ALJ's determination that Plaintiff has the mental RFC to perform past relevant work and other work.

First, it is worth emphasizing that Plaintiff's claim that the ALJ improperly determined she is capable of performing past relevant work relies on her assertion that she does not have the mental RFC to maintain employment. ECF No. 22, p. 1. Plaintiff does not argue there are physical limitations imposed by her back injuries or pain.

According to Plaintiff, the ALJ did not sufficiently articulate her rationale to reject portions of a medical opinion while accepting others and did not provide reasons to support the rejection of the opinions of the consultative

examiners. Id., p. 2. Plaintiff maintains that her position is supported by the consultative physicians (Dr. Slade and Dr. Long)[4] who opined that Plaintiff is "incapable of concentrating or remembering adequately in order to follow through completely with instructions that may be given to her in an employment situation." Id., p. 3 citing to Dr. Slade's Report at Tr. 487 and Dr. Long's Report at Tr. 482. Plaintiff also argues that Dr. Long noted she had not received mental health treatment for two years because she had no health insurance. Id., p. 3 citing to Dr. Long's Report at Tr. 482. However, it is clear from the report that Dr. Long's notation regarding Plaintiff's lack of treatment is not his own finding but, rather, a documentation of what "Ms. Ezell indicated" to him. Tr. 482.

Plaintiff is mistaken in her assertion that the ALJ rejected the consultative opinions of Dr. Long and Dr. Slade. Dr. Long, the psychologist, examined Plaintiff once, on May 31, 2017. Tr. 480-83. Dr. Long determined that Plaintiff was "depressed"; however, she was "responsive," "courteous", "there was nothing odd about her thinking," she was "acceptably oriented," and "her immediate recall and delayed recall [were] intact." Tr. 482. Dr. Long found Plaintiff to have "acceptable" insight, "capable of making appropriate

---

[4] Dr. Slade is a neurologist; and Dr. Long is a licensed psychologist. The physicians examined Plaintiff at the request of the SSA.

decisions," her attention was "deemed to be intact," and he found her "capable of managing her own affairs." Tr. 482-83. In addition, Dr. Long opined that Plaintiff should

> seek professional psychological/medical help to address her anxiety, unresolved trauma and mood related issues. Upon the approval of her physician, she is encouraged to seek employment consistent with her previous training and work experience. **There appear to be significant psychological barriers to employment which may improve with proper and consistent treatment. Left untreated, her prognosis is poor.**

Tr. 483 (emphasis added). The ALJ did not reject Dr. Long's opinion but accorded Dr. Long's opinion "little weight" because he "failed to provide any work-related functional imitations and the limitations he mentioned [were] general and not specific." Tr. 25.

Approximately two weeks later, on June 12, 2017, Dr. Slade examined Plaintiff and opined that she

> [p]resently, . . . is incapable of organized goal-directed activity because of the disorganization mentally from severe anxiety with depression; [however, her] level of pain augments both the anxiety and depression . . . **making her incapable of concentrating or remembering . . . in order to follow through completely with instructions that may be given to her in an employment scenario**.

Tr. 487 (emphasis added).

In line with Dr. Long's prognosis, Dr. Slade offered that "with psychiatric treatment pharmacologically, the symptoms may resolve

sufficiently to allow sedentary domain activities." Id. The ALJ did not reject Dr. Slade's opinion and, instead, "concur[red]" with his opinion according it "significant weight" – specifically, that Plaintiff could lift up to twenty pounds and could occasionally stoop. Id. Moreover, the ALJ disagreed with Dr. Slade's opinion regarding sedentary work because a finding that Plaintiff could lift up to 20 pounds would "double" the requirements of sedentary work. Id. The ALJ also disagreed that Plaintiff "would need to frequently change positions because she worked full time at the light exertional level and the VE testified the position would not allow frequent position changes." Id. The ALJ found Dr. Slade to be of the opinion that it was Plaintiff's "mental health, not her physical capabilities, that kept her from work at the time of the evaluation." Tr. 25, 487. The ALJ noted that Plaintiff promptly sought treatment after Dr. Slade's examination; and her mental symptoms subsided. Tr. 25.

As to Plaintiff's mental impairments, the ALJ found that the medical record (both pre-consultative and post-consultative examinations) supported a finding that Plaintiff "is able to understand information, remember it and follow instructions, answer and ask questions, solve problems, use reasoning, and use judgment with minor modifications or adjustments." Tr. 24, 337, 405, 482, 485, 605. Plaintiff's depression causes some "mild

challenges in social functioning" but she is "able to deal with others at home, while managing herself and personal responsibilities." Tr. 21, 337, 405, 481-82. The ALJ also found that Plaintiff's has the "ability to concentrate/complete tasks/maintain pace during consultative examinations, manage herself and personal responsibilities, and respond appropriately to questions." Tr. 21, 482, 618. Finally, the ALJ found that Plaintiff is "able to regulate emotions, control behavior," can "maintain" her own "well being by adapting to changes, setting realistic goals, making plans, maintaining personal hygiene, and being aware of and able to avoid hazards." Tr. 21, 337, 405, 482-83. Accordingly, the ALJ determined Plaintiff's mental impairments "are stable," "do not cause more than minimal limitation in" Plaintiff's "ability to perform basic mental work activities," and "cause no more than mild limitations in any of the functional areas." Tr. 20, 22.

Although Plaintiff argues there is "no substantial evidence" (ECF No. 22) to support the ALJ's determination of her mental impairments, the ALJ cited, in support, exhibits 1F, 2F, 4F, 5F, and 6F (her medical records from all treating physicians and Dr. Slade).[5] Tr. 25.

---

[5] See also the entire list of exhibits considered by the ALJ as attached to the ALJ's decision. Tr. 29-33.

The Court has conducted an independent review of Plaintiff's medical records. Plaintiff was under the care of Dr. Charlie Richardson and other medical providers at Neighborhood Medical Center (NMC) beginning in June 2017, the time immediately following the consultation with Dr. Slade, and through April 2018. Tr. 599-629. There, Plaintiff received regular prescriptions for Prozac and other medications. Id. Although, she initially presented with depression, crying, and indicated memory problems (Tr. 622), medication and treatment provided by NMC were effective. As late as April 2018, NMC regularly found Plaintiff "healthy," "well nourished," with "good" or "fair judgment," "normal mood and affect," was "active and alert," "oriented"; and, notably, Plaintiff's memory was "normal." Tr. 600-01, 608, 610, 612, 622. Plaintiff also reported to NMC that she was her mother's "caregiver," had "pain" but had "no difficulty walking," "no swelling," she "used to go to pain management," and was found to be "ambulating normally." Tr. 600, 605, 618, 622.

Plaintiff's medical records predating the consultations with Dr. Long are consistent with Plaintiff's post-consultation treatments and diagnosis. In 2013, Plaintiff presented to Tallahassee Memorial Hospital (TMH) with back pain. Tr. 464, 466-467. Although degenerative disc disease, disc herniation, stenosis and other conditions were noted, mentally, Plaintiff was "alert and

oriented," "no focal neurological deficit observed," "cooperative" with "normal judgment," and had "full" and "normal" range of motion in all four limbs. Tr. 464, 466-467.

Between 2014 and 2015, Plaintiff was also treated on at least six occasions by Tallahassee Neurology Specialists for her back pain and "mild degeneration at L4/5, L5/S1 with slight canal stenosis at L4/5." Tr. 410-420. The records indicate her upper extremity pain, headaches, and neck pain were previously resolved with surgery. Tr. 410. At each visit, mentally, Plaintiff had "appropriate affect and demeanor" and "normal thought and perception." Tr. 411, 417, 420, 425, 429, 432. The medication regimen provided Plaintiff "increased functionality" and allowed her to "remain functional and maintain a full time job." Tr. 412, 413, 414. At each visit, Plaintiff had "normal gait [and] muscle strength 5/5 in all major muscle groups, normal overall tone spine," and a "mild" "thoracic lateral curvature." Tr. 417, 420, 425, 429, 432.[6]

The suggestion by Plaintiff that she did not receive mental health treatment for two years prior to her consult with Dr. Long in May 2017 is incorrect. ECF No. 22, p. 3. From 2014 through 2016, Plaintiff was treated

---

[6] Note: some of the medical records from Tallahassee Neurology Specialists are duplicated at Tr. 492-498).

by Patients First North (Patients First). Tr. 334-91. During the examinations, she was "alert and oriented," although "tearful," had "depression" and "anxiety," and was prescribed several medications during this time, including Prozac, Zanax, and Cymbalta. Tr. 337, 343, 346, 358, 362-363, 367, 373. Plaintiff suffered from the death of her husband and various other stressors, which exacerbated her mental conditions. Tr. 335-91; see also 437-78.

Relatedly, also in 2016, Plaintiff was treated by TMH for migraines. Tr. 473. She was "alert and oriented" with "no focal neurological deficits observed," "cooperative"; and her mood and affect were "appropriate." Tr. 475. She had full range of motion in her extremities. Id. On another occasion, Plaintiff was treated by TMH for "chest pain." Tr. 405. Depression was noted but "she is motivated to push through the depression and care for her mother who also has coronary artery disease." Id. Plaintiff was "alert and oriented" with "no focal deficits," "normal muscle tone and strength in all four extremities." Tr. 407, 442, 450.

At the hearing, Plaintiff testified on her own behalf and explained how her impairments would affect her at work. She described her extensive work experience as an "accountant 4" and a regulatory specialist for the State of Florida's Department of Business Professional Regulation. Tr. 44-45. Plaintiff admitted that both positions were "sit-down jobs" where she

reviewed files and did "filing, auditing, accounting works and maintain[ed] accounts . . . a lot of . . . math." Tr. 45. Plaintiff testified that she had back pain since "early 2000, and I've just been pushing through it ever since then." Tr. 47. She admitted that she underwent various medical treatments including neck surgery in 2012 but went back to work and her neck pain improved. Id. Plaintiff testified that she did not have surgery on her lower back but continued "with pain management" prior to her "early" retirement and received "injections." Tr. 47-49. Plaintiff admitted that she spends her days "clean[ing] sometimes . . . do[ing] a little cooking" and has to "sit down or lay down" because she cannot stand up from the pain. Tr. 50. She stated she had not been able to go shopping "lately . . . because of the pain . . . and swelling in her legs" since it takes approximately two and one-half hours to shop. Tr. 51. Plaintiff testified she could not lift more than five pounds and could not bend over to clip her toenails or shave and needed assistance. Tr. 52. Plaintiff testified that she took care of her mother during the time her mother lived with her from 2007 through 2016 (the period of time predating the consultative examinations); but her mother decided to go to a rehabilitation center nursing home, in part because, physically, she could no longer take care of her mother's needs. Tr. 53-54. However, Plaintiff's medical records demonstrate an inconsistency. As late as March 2018, just

four months prior to the ALJ's hearing, Plaintiff reported to NMC that she was "consumed with being her mother's 24 hour a day caregiver." Tr. 605.

Plaintiff also testified about her perceived mental limitations which included forgetting appointments, an inability to remember six items or less on a list, and the inability to "think straight." Tr. 58. She admitted that she has received counseling; and the medication management helped her. Tr. 59. Plaintiff testified that her mental impairments would affect her at work because she would have to "[know] what to do next," look at schedule updates, she might misplace files, or need to remember "which way to go in the application." Tr. 60. The medical evidence does not support these assertions. Plaintiff also testified that she would not be able to do another job because she cannot stand due to the pain and would need to sit. Tr. 62.

The ALJ specifically acknowledged Plaintiff's mental impairments, including PTSD, anxiety, and "some memory deficits" but determined that, although Plaintiff had required medical mental health treatment, these impairments did not cause more than minimal limitations in her ability to perform basic mental work. Tr. 20-22. Without rejecting the opinions of the consultative doctors, the ALJ identified within the medical records that with continued medication and treatment, Plaintiff improved over time. Tr. 25.

Moreover, there was "no medical evidence to support any decline in the claimant's physical capabilities after she retired." Id.

Plaintiff's argument that the notation made by Dr. Slade should be given, essentially, controlling weight is rejected. First, even a "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996; rescinded eff. Mar. 27, 2017). The statements from Dr. Slade and Dr. Long, respectively, that Plaintiff would not be able to "follow through completely with instructions that may be given to her in an employment scenario" and "there appear to be significant psychological barriers to employment which may improve" are not medical opinions. Opinions on issues regarding whether a claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986); see also, supra, at n.6. Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of

assessing the claimant's RFC. Beegle v. SSA, Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

Second, the notations Plaintiff refers to include her subjective statements to her physicians and findings by the consultative examiners, each of whom examined her on one occasion. Third, Plaintiff cannot show that these consultative opinions undermine the ALJ's assessment of her mental RFC.

The ALJ considered the relevant medical records -- pre-consultative and post-consultative -- and "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" provided the ALJ's decision is sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). The Court is satisfied that the ALJ did so. The ALJ found that, in sum, the medical records demonstrate that Plaintiff's medical treatment "has been conservative" consisting primarily of medication management." Tr. 20, 335-391, 480-83. None of the medical records indicate that Plaintiff's mental impairments would have interfered with her ability to perform past relevant work. To the contrary, as suggested by Dr. Slade, and outlined by the ALJ, medical treatment would, and ultimately did, improve Plaintiff's condition so that her mental functioning was

"stable"; and she had the "capacity" to care for her mother and "manage her own affairs." Tr. 20-22. According to the ALJ, "the common denominator" of all the "treating, examining, and non-examining physicians" is that "none of the physicians has offered an opinion that the claimant is restricted from working." Tr. 25.

Substantial evidence supports the ALJ's decision; and she accorded the consultative opinions proper weight and considered numerous factors when evaluating the doctors' opinions. See 20 C.F.R. § 404.1527. The ALJ explained the weight she gave to these opinions with sufficient specificity to withstand judicial scrutiny. No error has been shown; and this Court will not substitute its own conclusions for that of the ALJ with such a complete record.

C. The ALJ did not improperly rely upon incomplete or uninformed opinions from the non-examining consultants.

Plaintiff argues that ALJ should have fully developed the record because the non-examining physicians (Dr. McKenzie, Dr. Meyer, and Dr. Galloway) did not have the benefit of reviewing the consultative opinions and the subsequent treatment records that "reflect ongoing problems with memory and concentration" and a "major change in the medical records." ECF No. 22, p. 7. True, the non-examining physicians did not review the records from NMC; however, two of the three doctors reviewed the

consultative opinions. Plaintiff misinterprets the medical record. Contrary to Plaintiff's allegation, the only non-examining physician who did not consider the consultative opinions was Dr. McKenzie.

Dr. McKenzie reviewed Plaintiff's medical records dating from 2011 through August 17, 2016, which included records from Patients First documenting Plaintiff's anxiety, depression, insomnia, and medication regimen. Tr. 77-80, 87-97. Regularly, Plaintiff was oriented, able to take care of herself despite some difficulties and limitations due to pain, she was able to drive, take care of her mother, and handle her finances. Id. Dr. McKenzie's report, dated March 6, 2017, predates Plaintiff's consultative examinations and her subsequent treatment from NMC by approximately three months. Id. Nonetheless, Dr. McKenzie's opinion was similar to the consultative physicians and the treating physicians at NMC. Dr. McKenzie found that there was no diagnosis for PTSD or memory issues, Plaintiff was not taking medication at the time, and Plaintiff's mental impairments were "non-severe" because she could take care of household chores, was able to drive, and could take care of her financial matters. Tr. 80, 92. There is no later medical diagnosis or symptomology that would contradict Dr. McKenzie's findings.

Dr. Meyer considered Dr. Slade's and Dr. Long's evaluations as well as the pre-consultative medical records. Tr. 103-09. Dr. Meyer

acknowledged Plaintiff's diagnoses of anxiety and depression. Tr. 108. However, Dr. Meyer noted that there were inconsistencies in Plaintiff's statements because Plaintiff's daily living activities and "social functioning appear grossly intact from a mental standpoint." Tr. 109. There was evidence of a "mental MDI," but the severity of symptoms were not fully supported by the objective evidence. Id. Still, Dr. Meyer confirmed that Plaintiff's allegations were "partially consistent." Id.

Dr. Galloway also considered the same records, including the reports from Dr. Slade and Dr. Long. Tr. 110-15. Dr. Galloway found Plaintiff's claims to be "partially credible"; and the record demonstrated that Plaintiff could take care of her personal needs "with some difficulties and limitations due to pain," and was able to drive and handle her finances, though she did not shop or complete household chores. Tr. 113. Dr. Galloway opined that Dr. Slade's opinion should not be given controlling weight based on the objective evidence and because he was not Plaintiff's treating physician. Tr. 110.

Contrary to her assertions, Plaintiff relies on her own self-serving complaints to the post-consultative treating physicians reporting memory problems; however, as articulated above, NMC providers repeatedly found her to have "good" or "fair judgment," "normal mood and affect"; and, most notably, her memory was "normal." Tr. 600-01, 608, 610, 612, 622. And,

despite her limitations, she reported to NMC physicians that she was still her mother's "caregiver." Tr. 600, 605, 618, 622. This is consistent with the medical reports predating the consultative examinations.

After providing a full discussion of the medical records, the ALJ found "after the claimant saw Dr. Slade she promptly sought treatment and her symptoms subsided"; and the findings of the non-examining physicians "are consistent with her treatment regimen, which has primarily consisted of medication management that she has responded well to." Tr. 20-23, 25 (citing to exhibits from TMC, Dr. Long's report, Dr. Slade's report, Tallahassee Orthopedic Clinic, and NMC records). In short, the significant weight the ALJ accorded to Dr. Slade's opinion, was supported by Plaintiff's subsequent treatment she received at NMC. Tr. 25. The ALJ did not make a finding as to the weight of findings of the treating physicians nor did she discredit it. Therefore, as a matter of law, the ALJ accepted the treating physicians' opinions as true. MacGregor, 786 F.2d at 1053. Although "the ALJ has an obligation to develop a full and fair record," Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (*per curiam*), she "is not obliged to order [another] consultative examination when the record contains sufficient evidence to support a determination." Ybarra v. Comm'r of Soc. Sec., 658 F.

App'x 538, 543 (11th Cir. 2016). The ALJ did not reject the medical opinions; and there was substantial evidence to support the ALJ's findings.

D. <u>Substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she could perform past relevant work and other work and testimony from the VE supported this conclusion</u>.

Plaintiff argues that the ALJ found Plaintiff "limited to simple, routine tasks" but, despite this limitation, the ALJ also determined she can return to her past relevant work as an audit clerk and accounting clerk. ECF No. 22, p. 2. Plaintiff claims that because there is no testimony from the VE at the hearing to support this conclusion, reversal is warranted. <u>Id</u>. Plaintiff cites to no authority to support her argument.

At the hearing, the VE testified that she could provide the ALJ with an assessment of Plaintiff's past work as an accounting clerk and an audit clerk, which are classified as "sedentary" and are "performed at light [exertional level]." Tr. 67. The ALJ posed a hypothetical question to the VE: whether an individual of Plaintiff's age, education, and past work and "limited to light work with the following limitations: that the individual can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds . . . can occasionally balance, and stoop, and can frequently kneel, crouch and crawl . . . can have frequent exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, and gases, and can have frequent exposure to

unprotected heights, moving mechanical parts, and workplace driving . . . perform any of the past jobs . . . described." Tr. 67-68. The VE testified that Plaintiff's two prior jobs would be available as they were performed, depending on the sitting requirement. Tr. 68-69. Also, this "hypothetical individual" could perform other work such as a marker, photocopying machine operator, and router. Tr. 69. However, this individual could not be off task more than fifteen percent of the day, could not perform any other work, and could not miss two days of work per month on a regular basis. Tr. 69-70. Fewer positions would be available if the hypothetical individual could only sit or stand for 30 minutes at a time. Tr. 71.

On cross-examination, Plaintiff's counsel added to the ALJ's hypothetical and posed: if the "claimant was limited to simple, routine, repetitive tasks, that would put the person in unskilled work, and they'd be unable to maintain employment, is that right?" Tr. 71. The VE responded, ". . . that would preclude past work, but they would still be able to perform the jobs that were listed in response to the hypo one as they are simple, routine, repetitive task positions." Id. Yet, the VE added, "absenteeism . . . would be preclusive because then we would be looking at unskilled labor." Id. The ALJ inquired, "but would that eliminate past work"; and the expert stated, "yes, Your Honor, it would." Tr. 72.

In determining Plaintiff was capable of performing her past relevant work and other work, the ALJ relied upon Plaintiff's own description of her work (Tr. 26 citing to "Exhibit 6E"[7]), the Dictionary of Occupational Titles (DOT) and relevant statutes (Tr. 26), Plaintiff's own assertions (Tr. 23) and the testimony of the VE (Tr. 27). The ALJ found the VE's testimony "consistent with the information contained in the DOT." Tr. 27. "Based on the testimony of the VE" the ALJ concluded "that considering the [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . ." Tr. 27.

To the extent that Plaintiff would argue that the VE did not testify specifically to the impact of Plaintiff's alleged mental impairments, the absence of such testimony is of no consequence here. As narrated above, the ALJ relied on the medical evidence and Plaintiff's functional ability to support her finding that Plaintiff's mental impairments "cause no more than mild limitations in any of the functional areas," are "stable," and are "non-severe," which did not affect her ability to work. Tr. 20-22. As articulated

---

[7] Exhibit 6E is Plaintiff's "Work History Report" submitted with her application for benefits. TR. 288-90.

above, at step 4, the claimant bears the burden of establishing a *severe* impairment that precludes the performance of past relevant work. <u>Phillips</u>, 357 F.3d at 1237. Further testimony from the VE to support the ALJ's decision is not necessary. <u>See</u> <u>Carter v. Comm'r of Soc. Sec</u>., 411 F. App'x 295, 298 (11th Cir. 2011) (ALJ did not reversibly err by omitting specific reference in hypothetical to claimant's mental impairment, which was deemed mild by the examining psychologist, since under circumstances ALJ appropriately found it did not affect his ability to work).

Still, although the ALJ ascertained Plaintiff's mental RFC as "non-severe," she found Plaintiff was "limited to simple, routine tasks." Tr. 23. This is also supported by the medical records, which the ALJ incorporated into her decision. Tr. 20-27.  <u>See</u> <u>Land v. Comm'r of Soc. Sec</u>., 494 F. App'x 47, 49-51 (11th Cir. 2012) (the court rejected claimant's argument that the ALJ failed to properly ascertain his mental RFC when the ALJ found the claimant "can perform . . . simple, routine, repetitive tasks." The finding was supported by the medical records. Although the ALJ failed to ask a hypothetical question of the VE that considered all of his mental limitations, the ALJ properly incorporated the relevant medical evidence regarding claimant's limitations).

Ultimately, in determining Plaintiff's residual functional capacity, the ALJ considered limitations resulting from Plaintiff's medically determinable conditions including those the ALJ considered non-severe. Tr. 23. The ALJ found that while the impairments could reasonably be expected to cause the symptoms, "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. Accordingly, the Court finds no error. The ALJ's decision was supported by substantial evidence

## V.   Conclusion

Considering the record, as a whole, the findings of the ALJ are based upon substantial evidence in the record; and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**. The Clerk is **DIRECTED** to enter final judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on September 24, 2020.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**